Let's take up People v. John Gleghorn. Please proceed. May it please the Court, Counsel. My name is Lawrence O'Neill from the Office of the State Appellate Defender, and I represent John Gleghorn in this matter. This is a direct appeal following a jury trial where Mr. Gleghorn was found guilty of participating in the manufacture of methamphetamine. Mr. Gleghorn has raised two issues in this appeal. In Argument 1, I ask this Court to reverse its conviction and remand for a new trial, because under the facts of this case, the trial court had a duty to answer two questions raised by the jury during deliberations, which essentially asked whether Mr. Gleghorn's knowledge that co-defendant Billy Finney was making meth on the property made him a participant in the crime. The Court's refusal to answer the question in the following explicit issue of law was prejudicial error, thereby denying Mr. Gleghorn his right to a fair trial. Because the failure of a trial court to answer a jury's question involves the constitutional right to a fair trial, the State has the burden on review to prove the error harmless beyond a reasonable doubt. The State cannot meet that burden. Mr. Gleghorn and co-defendant Billy Finney were charged with participating in the manufacture of methamphetamine. Mr. Gleghorn was also charged with unlawful use of property for knowingly allowing Finney to use his property to manufacture methamphetamine. The State dismissed this charge before trial. Finney rented a cabin on Gleghorn's property. When the police came to Finney's cabin to serve a search warrant and arrest him on an unrelated matter, the officers found evidence of manufacturing the methamphetamine. The evidence also indicated that Mr. Gleghorn knew that Finney made meth at the cabin. As participation is the main element of the offense, the jury was given a non-IPI instruction definition of participate, which states participation in the manufacture of methamphetamine means to produce or to prepare methamphetamine or to assist in the production or preparation of methamphetamine. There was some facts in there about he furnished the lithium batteries or something and maybe a coffee grinder? Well, Your Honor, I don't, the evidence didn't, the evidence definitely, there was Mr. Finney, Mr. Gleghorn's statement that he gave Finney pills of pseudo-phetamine. I thought there was, there were coffee grinders. Where did the coffee grinder come from? I was a little confused. There's, well, Finney's girlfriend testified that she saw Mr. Finney, Mr. Gleghorn give Finney. A coffee grinder. Correct. And that's used in the manufacture, so he gave him some equipment to manufacture. That's, that's, that's a, that's a, that's a state's argument. However. Didn't they test that chemically to determine if there's anything on that coffee grinder? Yes, they did. And what'd they find? The DNA of, I believe it was Finney was on it, or perhaps, I believe so. But didn't they also, I thought they looked for, what was it grinding? Was it grinding up the pills or the, I don't know what they grind up. I think it was a coffee grinder. Yeah. Yes, yes. And I think that there was evidence that it was methamphetamine. Okay. Okay. However, Your Honor, there is that evidence that Mr. Gleghorn provided these items to Finney that obviously could be used to manufacture methamphetamine. But this issue revolves around the jury's question. And the jury's question suggests that the, because the jury asked whether essentially knowledge alone that Finney was manufacturing methamphetamine on the property was sufficient to make Mr. Gleghorn a participant. Therefore, so in other words, the jury was considering convicting, was considering whether Mr. Gleghorn could be responsible, could be guilty as a participant or aiding and abetting merely by the fact that he knew that methamphetamine was being manufactured. And that he furnished some of the equipment had nothing to do with it or some of the materials. Well, Your Honor, the jury's question suggests that they were convinced that the data established that Mr. Gleghorn supplied those items for the manufacture of methamphetamine. Otherwise, the jury would have asked if knowledge alone is sufficient. That certainly implies that they were considering, that they believed that Mr. Gleghorn only knew that the manufacturing was taking place on the property, not that he actively supplied anything. That seems to be the point of the question. Mere knowledge. Mere knowledge suggests that the jury was struggling with the question of whether, whether Mr., whether the evidence established that Mr. Gleghorn did provide any material to manufacture methamphetamine. But again, there was no evidence that Mr. Gleghorn personally made methamphetamine. The question then became whether he assisted Finney in the manufacturing of the drug. In that regard, the jury was, the, the prosecutor argued in the closing argument that Mr. Gleghorn was guilty by accountability. The jury was instructed, instructed as to accountability, saying that, that person is legally responsible for conduct another, of another, when with the attempt to promote or facilitate an offense, knowingly aids or solicits, aids or abets, or attempts to aid, solicit, or abet the planning or commission of the offense. Thus, the accountability instruction required that Mr. Gleghorn knowingly take an action, either soliciting or aiding or abetting. Then during the deliberations, again, the jury sent out two questions. One, does your knowledge of what is going on in the property make you responsible or a participant in the eye of the law? And secondly, does knowing but not reporting the legal activity make you a participant, participant? The, there was an argument about, the defense counsel and the prosecutor and the judge were discussing on the best way to answer the jury. And the defense counsel asked that both questions be answered no at the end of the discussion. However, the court answered, please refer to the jury instructions provided you, including the definitions of participation and accountability. In People v. Child, the Supreme Court held that with four minutes exceptions, the trial court has a duty to answer the jury's questions involving a question of law with specificity and accuracy. And the failure to do so here is prejudicial error. In this case, the court had a duty to answer the jury's questions on this matter of law. The jury's questions pertain to the law of accountability. The jury's questions concern whether mere knowledge that the property is being used unlawfully is sufficient to find guilt for aiding and abetting. The jury's questions display the differences between assist and aid and abet. Assisting can support guilt for consenting to the unlawful use of the property for the making of meth. However, mere consent and knowledge of the unlawful use of the property would not support guilt under accountability because consenting is not sufficient to constitute aiding and abetting. Again, aiding and abetting requires an act. Thus, the trial court had a duty to answer the jury's questions unless one of the four exceptions apply. However, none of the exceptions apply in this case. The first exception, that the instructions are readily understandable and sufficiently explain the relevant law, does not apply because the jury did not understand the instructions. And second, the instructions did not explain the law on how a person could assist by knowingly allowing the use of this real property to make methamphetamine but taking no action which aided and abetted the making of the drug. In other words, the instructions did not explain that mere knowledge and consent to the use of the property unlawfully to manufacture methamphetamine is insufficient to aid and abet for accountability. The second exception, that further instruction would so serve no useful purpose and would mislead the jury, also does not apply. The answer to the jury's question would serve the useful purpose of resolving the tension between assist and aid and abet. And the answer suggested by the tenant defense counsel, answering no to each of the questions, would not have misled the jury that mere knowledge is insufficient to support guilt under a theory of accountability because aiding and abetting requires an action. The third exception, that the jury's inquiry involves a question of law, a question of fact, does not apply because this involves a question of law. And the fourth exception, that an answer would be an opinion that likely would direct a verdict, does not apply either because informing the jury that knowledge alone does not support aiding and abetting would not direct a verdict on the question of whether knowingly allowing the unlawful use of property could support guilt for assisting the drug making. Therefore, the trial court had a duty to answer the jury's questions regarding an explicit question of law, and none of the four exceptions given in child's applies. Thank you. Thank you, counsel. Argument from the state. Your honors, counsel, may it please the court, Kelly Stacy on behalf of the state. I think there's a confusion presented here today in that the defendant was not trying on the charge of unlawful use of property. He was trying on the charge of participating in methamphetamine manufacturing with Billy Finney. Under that statute, participating in methamphetamine manufacturing, and I'll quote from it, means to produce, prepare, compound, et cetera, or to assist in any of these actions regardless of whether meth is actually produced. That statute is found at 720-ILCS-646-10. That unlawful use of property count was dismissed by the state on the first day of trial, and the defendant noted that in his opening brief. State's instruction number 17 tracks the exact language of that statute on participation in meth manufacturing. In order to find the defendant guilty, for the jury to find the defendant guilty, the state needed to show the defendant assisted Billy Finney in preparing or producing meth. In his reply brief and here today, the defendant argues he only knew meth was being made on his property, and there was no evidence he personally made meth. The state did not need to show he personally made meth because he was not charged with methamphetamine manufacturing. He was charged with participating in methamphetamine manufacturing. At trial, far beyond just proving that he knew what was going on on the property, the state submitted and introduced defendant's confession to the prime. In the state's brief at page 20, the state cited the record and included defendant's admission, and it states there, the defendant admitted he gave ephedrine pills to Billy Finney for the purpose of making methamphetamine. In his reply brief, defendant cites to the state's brief at page 20, but he glosses over the facts and leaves out entirely that part of the confession that he gave Finney the pills for the purpose of manufacturing methamphetamine. The accountability instruction that was offered by the parties stated a person is legally accountable for the conduct of another person when either before or during the commission of the offense and with the intent to promote or facilitate the commission of an offense. He knowingly solicits, aids, abets, agrees to aid or tends to aid the other person in the planning of the commission of the offense. The defendant has not argued the accountability instruction did not accurately state the law. He did not object at trial, and he doesn't argue today that that's not the proper definition of accountability. The defendant's admission that he supplied Finney with the cold pills for the purpose of making methamphetamine, it establishes intent under both the definition for accountability and under the definition for participation, which, again, tracks the language of the statute. Billy Finney's girlfriend, Krista Tyser, testified she saw a defendant give Billy Finney a coffee grinder, salt, and cold pills. Her testimony supports the defendant's admission that he did supply those cold pills. So given all this, the trial court properly referred the jury to both instructions for accountability and for participation in answering the jury's questions. The issue is whether or not the trial judge is not required to answer the jury's question when the instructions are sufficient. Here, the instructions were completely sufficient. They accurately stated the law. There was no error here. But even if this court finds error, the error is harmless. The evidence here was overwhelming, especially where the defendant admitted he supplied the cold pills for the purpose of making meth. That's what the charge alleges. That's enough to sustain the charge and to support the jury's verdict. Methamphetamine cannot be made without ephedrine. Even at a bare minimum, the defendant supplied the necessary ingredient with the intent that it be made into methamphetamine. So the state asked you to find there's no error in the court's response to the jury questions where the instructions accurately stated the law and where both participation and accountability instructions were given. And the defendant relies very heavily on that trial's case. But here, three out of those four exceptions do apply. Number one, the instructions are readily understandable and sufficiently explain the relevant law. Number two, further instructions would serve no useful purpose or would potentially mislead the jury. And number four, if the giving of an answer would cause the court to express an opinion, which would likely direct a verdict one way or another. Under Childs, we believe three of these four apply, that no error was committed here, and the state respectfully asks you to affirm the jury's verdict. Thank you, Your Honor. Thank you, Counsel. Rebuttal? Yes, Your Honor. I admit that the state had dismissed the lawful use of a property charge before. The relevance of that is that charge alleged that Mr. Gleghorn allowed the codified defendant to use the property, which was going to the jury's question about whether the knowledge was sufficient to find Mr. Gleghorn guilty. And the idea that the admission, the alleged admission by Mr. Gleghorn to Agent Busbee was sufficient evidence, that needs to be considered in a broader context. This was just, Busbee, this prosecutor asked Busbee to understand whether, what Mr. Gleghorn had told him, and Busbee said, well, he said that he gave Finney Pseudo-Federick to purchase methamphetamine from him and for Finney to pay Mr. Gleghorn's bills. Then the prosecutor asked, did he give it to purchase? And then Busbee said, no, it's to produce. So this alleged confession was not recorded. There was no statement. It was based upon Busbee's recollection, and he was led by the prosecutor to state that Mr. Gleghorn had said that he gave the pills to Finney in order to produce rather than just buy methamphetamine. But the idea that the instructions were sufficient, and this goes to the state's claim that the instructions were sufficient and that they accurately explained the law, and then points to the evidence that Gleghorn actually committed an act by giving Finney the pseudo-predator and the other items used in methamphetamine, that flies in the face of what the implication of the jury's question is, which is, is it sufficient to just know that the property is being used for methamphetamine? Now, that suggests that the jury was not convinced that the Mr. Gleghorn giving pseudo-Federick to Finney was sufficient to establish a cyst, because if it was, then there would have been no reason for the jury to ask the question of whether it takes more than mere knowledge. And so that, I think, weakens the state's case that the evidence was, you know, Mr. Gleghorn's confession and the other evidence was sufficient to show that Mr. Gleghorn assisted by giving pseudo-Federick, because otherwise the jury would not have asked that question of mere knowledge. And then the problem that this could have resulted in a, affected the verdict, contributed to the verdict, which is the test under harmless error, whether the state approves here on review, whether the error did not contribute to the verdict, is that the jury is struggling with whether the question of whether mere knowledge is sufficient. And then they consider accountability in that context. So the jury may have convicted based upon the belief that mere knowledge is sufficient to establish aiding or abetting as an accomplice. So that the state cannot show here that the court's refusal to answer this explicit question of law did not contribute to the verdict. And secondly, if one of the exceptions do apply, the court that had discretion to answer such a question and abuse of discretion, as I cited in the brief, Van Winkle versus Corning-Owens-Fireglass, that when the jury asks a specific question and expresses confusion about a specific matter of law, it is an abuse of discretion for the trial court to refer the jury back to the instructions, which is in effect no answer at all. So even if this court finds that one of the exceptions apply, and the court had discretion, the court didn't abuse this discretion by not answering. The trial counsel for the defendant suggested answering the questions no. Is that correct? Correct, Your Honor. You think that would have been sufficiently specific? I think that's an accurate answer to the question of law, whether mere knowledge is sufficient to support guilt for aiding and abetting, or whether making a participant is an accomplice. Thank you. Thanks. We'll take this case under advisement, issue a written ruling, and the court will be at recess.